UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| Safeco Insurance Company of America,<br>    *Plaintiff*,<br><br>        *v.*<br><br>Roderick A. Vecsey and Pamela Vecsey,<br>    *Defendants.* | Civil No. 3:08cv833 (JBA)<br><br><br><br>September 3, 2009 |

SUBSTITUTED RULING AND ORDER ON
MOTIONS TO COMPEL [Doc. ## 20, 26]†

Plaintiff Safeco Insurance Company of America ("Safeco") has moved to compel Defendant Pamela Vecsey ("Mrs. Vecsey") to respond to interrogatories and a request for production related to marriage counseling and psychological treatment she has received in relation to injuries she sustained in an incident in which she alleges her husband, Defendant Roderick A. Vecsey ("Mr. Vecsey"), negligently and accidentally threw a carrot at her. Mrs. Vecsey moves to compel Dr. C. E. Bain (Safeco's expert witness), and his employer, Biodynamic Research Corporation ("BRC") to produce documents pursuant to subpoenas

---

† To reflect modification after reconsideration, this Substituted Ruling & Order supersedes the Court's prior ruling on the parties' motions to compel [Doc. # 41], which was located at *Safeco Ins. Co. of Am. v. Vecsey*, No. 3:08cv833 (JBA), 2009 WL 2365889, 2009 U.S. Dist. LEXIS 65769 (D. Conn. Jul. 30, 2009). Safeco moved for reconsideration of the July 30th Order, seeking deletion of the requirement of disclosure of "[the] gross annual income" and "[the] gross annual income from forensic consulting services for each calendar year" of Safeco's expert witness, Dr. C. E. Bain, and Dr. Bain's employer, Biodynamic Research Corporation ("BRC"). (*See* Pl.'s Mot. Reconsid. [Doc. # 44].) Safeco's motion for reconsideration is granted because the scope of the July 30th Order exceeds what Safeco agreed to and Mrs. Vecsey sought at the June 29, 2009 status conference. Accordingly, this Substituted Ruling & Order, modifying Part II of the July 30th Order, eliminates the actual income disclosure requirement, *see generally Behler v. Hanlon*, 199 F.R.D. 553 (D. Md. 2001), but leaves unchanged the Court's disposition of Safeco's motion to compel.

served on each of them. Each motion will be granted in part and denied in part as set forth below.

I.   Safeco's Motion to Compel Medical Records

   A.   Background

In Connecticut Superior Court Mrs. Vecsey brought an action against Mr. Vecsey for what she alleges was his negligence in accidentally throwing a carrot at her on July 14, 2006, which caused severe trauma to her eye ("Negligence Action"). Mrs. Vecsey alleges a number of specific "serious and painful injuries," all of which are physical in nature and which have resulted in her incurring expenses for various forms of medical care, as well as the "further consequence" of suffering "from physical and mental distress." (Negligence Action Compl., Ex. A to Pl.'s Mot. Compel [Doc. # 20], at ¶¶ 4–9.) At the time Mrs. Vecsey was injured the Vecseys were covered by two insurance policies issued by Safeco: a "Quality-Plus Homeowners Insurance Policy" and a "Personal Umbrella Insurance Policy." (Am. Compl. [Doc. # 7-1] at ¶¶ 7–8.) While the Negligence Action was pending Safeco brought this declaratory-judgment action seeking a declaration that under the Homeowners Policy and Umbrella Policy "there is no coverage for [Mr.] Vecsey . . . for the claims asserted against him in the [Negligence Action]"; that it "has no duty to defend [Mr.] Vecsey in the [Negligence Action]"; and that it "has no duty to indemnify [Mr.] Vecsey for any judgment against him in the [Negligence Action]." (*Id.* at 7.)

Among Safeco's grounds for seeking declaratory relief are three relevant here: First, Safeco asserts that Mrs. Vecsey's injuries were "expected or intended by [Mr.] Vecsey" and "the foreseeable result of an act intended by [Mr.] Vecsey," and thus fall within the Homeowners Policy's exclusion of coverage "for bodily injury which 'is expected or intended by any insured or which is the foreseeable result of an act or omission intended by any insured[.]'" (*Id.* ¶¶ 15–17.) Second, Safeco asserts that Mrs. Vecsey's injuries are "the result of physical abuse by [Mr.] Vecsey," and thus fall within the Homeowners Policy's exclusion "for bodily injury 'arising out of physical or mental abuse[.]'" (*Id.* ¶¶ 20–21.) Third, Safeco maintains that Mr. Vecsey intended to harm Mrs. Vecsey, and thus falls the incident within an exclusion to the Umbrella Policy that "excludes coverage for any insured who 'commits or directs an act with the intent to cause a loss.'" (*Id.* ¶¶ 44–45.) To prove its allegations, Safeco seeks discovery regarding the Vecseys' marriage counseling with Melissa Thornton, LMFT ("licensed marriage and family therapist"), and Mrs. Vecsey's treatment by a psychologist, Dr. Robert Matefy, to determine whether a physically-abusive relationship existed between the Vecseys and whether Mrs. Vecsey has described the carrot incident differently during therapy than in her litigation.

Safeco moved to compel Mrs. Vecsey to respond to two interrogatories and one request for production. Mrs. Vecsey objects only to the request for production, which seeks:

REQUEST FOR PRODUCTION

1. Copies of all reports, records, notes, x-ray films, MRI films, CT scan films[,] photographs, and other materials pertaining to Pamela

>Vecsey, from all physicians, surgeons, psychologists, therapists, counselors, dentists, chiropractors, hospitals and/or other providers identified in response to the foregoing interrogatories and a signed HIPAA authorization allowing the plaintiff to obtain the same directly.

(Discovery and Responses, Ex. B to Pl.'s Mot., at 4, 6, 8.)

Mrs. Vecsey objects to Safeco's request for records of her treatment with her psychologist, Dr. Robert Matefy, and her marriage therapist, Ms. Melissa Thornton, LMFT.

### B. Discussion

Mrs. Vecsey's primary objection is that regardless of their relevance, the records sought are privileged.[1] Safeco argues that even if the records are privileged, Mrs. Vecsey has impliedly waived her privilege by placing her mental state at issue in this case. Finally, in its reply memorandum Safeco raises for the first time the argument that Mrs. Vecsey has a contractual duty under the Homeowners Policy to provide to Safeco all relevant information sought by it.

---

[1] Mrs. Vecsey's relevance objection—that the records sought are of treatment subsequent in time to the carrot incident, and thus cannot contain relevant information—is meritless. The interrogatories and request for production of therapy records seek information and documents whose relevance is apparent from Safeco's three theories of non-coverage described above. Under the Federal Rule governing discovery, parties "may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense—including the existence, description, nature, custody, condition, and location of any documents or other tangible things and the identity and location of persons who know of any discoverable matter." Fed. R. Civ. P. 26(b)(1). The Rule further specifies that "[r]elevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." *Id.* Moreover, "relevance" in this context is given a "broad" construction, and a party arguing that information sought in discovery is not relevant "bears the burden of demonstrating 'specifically how, despite the broad and liberal construction afforded the federal discovery rules, each [request] is not relevant[.]" *Klein v. AIG Trading Group Inc.*, 228 F.R.D. 418, 422 (D. Conn. 2005).

### *1.     Application of Privilege*

Where, as here, a federal court's subject-matter jurisdiction is premised on diversity of citizenship,[2] the court "must apply state law to privilege issues." *Uniroyal Chemical Co. v. Syngenta Crop Protection*, 224 F.R.D. 53, 55 n.1 (D. Conn. 2004); *see also Application of Am. Tobacco Co.*, 880 F.2d 1520, 1527 (2d Cir. 1989) ("in a diversity case the existence of a privilege is to be determined by reference to state law"); Fed. R. Evid. 501 ("[I]n civil actions and proceedings, with respect to an element of a claim or defense as to which State law supplies the rule of decision, the privilege of a witness, person, government, State, or political subdivision thereof shall be determined in accordance with State law.").

Under Connecticut law, "all communications" between a licensed "marital and family therapist" ("LMFT") and his patient or his patient's family "relating to the diagnosis and treatment of" the patient[3] "shall be privileged" and may be disclosed only if the patient "or [her] authorized representative consents to waive the privilege and allow such disclosure." Conn. Gen. Stat. § 52-146p(a) & (b). The same is true of communications

---

[2] Although Safeco brings this declaratory-judgment action under 28 U.S.C. § 2201, "the Declaratory Judgment Act does not by itself confer subject matter jurisdiction on the federal courts. . . . Rather, there must be an independent basis of jurisdiction before a district court may issue a declaratory judgment." *Correspondent Servs. Corp. v. First Equities Corp. of Florida*, 442 F.3d 767, 769 (2d Cir. 2006). Safeco asserts the existence of diversity jurisdiction under 28 U.S.C. § 1332. (*See* Am. Compl. ¶¶ 1–6.)

[3] Under the statutes, "'[c]ommunications' means all oral and written communications and records thereof relating to the diagnosis and treatment of a person between such person and a [psychologist or marital and family therapist] or between a member of such person's family and a [psychologist or marital and family therapist]." Conn. Gen. Stat. §§ 52-146c(a)(3), 52-146p(a)(3).

between a psychologist and his patient. *See* Conn. Gen. Stat. § 52-146c(b). An exception applicable only to the psychologist-patient privilege states:

> Consent of the person shall not be required for the disclosure of such person's communications[] . . . [i]f, in a civil proceeding, a person introduces [her] psychological condition as an element of [her] claim or defense . . . and the judge finds that it is more important to the interests of justice that the communications be disclosed than that the relationship between the person and psychologist be protected.

Conn. Gen. Stat. § 52-146c(c)(2).

In order to assess her claims of privilege the Court ordered Mrs. Vecsey to produce for *in camera* review all "documents as to which privilege is claimed." (Scheduling Order dated July 1, 2009 [Doc. # 32].) Mrs. Vecsey produced for *in camera* review records of her treatment with Dr. Matefy, and filed a privilege log of these documents. (*See* Mrs. Vecsey's Privilege Log [Doc. # 36].) Having reviewed the documents, the Court concludes that they are all records of communications between Mrs. Vecsey and Dr. Matefy relating to her diagnosis and treatment, and are thus protected by the psychologist-patient privilege.

As to the records of her marriage counseling with Ms. Thornton, however, Mrs. Vecsey has neither produced records of her treatment with Ms. Thornton for *in camera* review, nor produced a privilege log pursuant to Local Rule 26(e). She asserts that she "has sought" these records "but, to date, has not received them, despite numerous requests." (Mrs. Vecsey's Mem. Opp'n Mot. Compel [Doc. # 22] at 1 n.1.) Mrs. Vecsey's counsel's bare assertion that he has made "numerous requests" for the records is insufficient. Under Rule 34 "discovery may be had of documents that are in the 'possession, custody or control' of a party." 8A C. Wright, A. Miller & R. Marcus, *Federal Practice and Procedure*, § 2210 (2009 ed.) (quoting Fed. R. Civ. P. 34). Under this standard, at the very least, "[i]nspection can be

6

had if the party to whom the request is made has the legal right to obtain the document, even though in fact it has no copy," *id.* (citing *Scott v. Arex, Inc.*, 124 F.R.D. 39 (D. Conn. 1989)), and courts, particularly in this circuit, have held that a party may have "control" over documents even where it does not have entitlement to the documents if it has the "practical ability to obtain" them. *See, e.g.*, *In re NTL, Inc. Secs. Litig.*, 244 F.R.D. 179, 195 (S.D.N.Y. 2007) ("The concept of 'control' has been construed broadly. . . . Under Rule 34, '"control" does not require that the party have legal ownership or actual physical possession of the documents at issue; rather, documents are considered to be under a party's control when that party has the right, authority, or practical ability to obtain the documents from a non-party to the action.'") (citations omitted); *see generally* Wright, Miller & Marcus, 2009 suppl. at § 2210.

Although the parties do not address whether Mrs. Vecsey has "control" over records of her counseling with Ms. Thornton, Mrs. Vecsey assumes that she is entitled to the records by her "numerous requests" for them, and Connecticut law expressly provides patients legal entitlement to their records of treatment by medical providers. *See* Conn. Gen. Stat. §§ 20-7c, 20-7d (requiring, "[u]pon a written request of a patient, a patient's attorney or authorized representative, or pursuant to a written authorization," that medical "provider[s]"—including LMFTs and psychologists—provide copies of reports and records of diagnosis or treatment to patient or another provider). Thus, for purposes of Rule 34 Mrs. Vecsey has "control" of records of her counseling with Ms. Thornton, and has made no showing by affidavit or otherwise of her lack of control over these records or of the contents of the records. Mrs. Vecsey has not met her burden to establish the applicability of the LMFT-patient privilege because the Court has been given no basis for determining whether

7

all these records relate only to diagnosis and treatment, and Safeco's motion to compel is granted as to those records.

### *2.     Implied Waiver of Records of Treatment with Dr. Matefy*

There is no implied waiver provision for the LMFT-patient privilege applicable in this case. By the terms of the implied waiver provision of the psychologist-patient privilege, only after "a person introduces [her] psychological condition as an element of [her] claim or defense" may a court require non-consensual disclosure of a litigant's privileged communications with her psychologist if "the interests of justice" outweigh the need to protect the private "relationship between the person and psychologist." Conn. Gen. Stat. § 52-146c(c)(2). Conversely, the Court cannot require disclosure if a litigant's "psychological condition" is not "an element of [her] claim or defense." *Id.*; *see also Cabrera v. Cabrera*, 23 Conn. App. 330, 339 (1990) (emphasis in original) (disclosure requires both that litigant "put her mental health in issue . . . *in addition*" to a court finding that the interests of justice outweigh competing interests in privacy). The text of the privilege statute, however, does not provide guidance for determining when a litigant has "introduce[d] [her] psychological condition as an element of [her] claim or defense." Conn. Gen. Stat. § 52-146c(c)(2).

In discussing the analogous attorney-client privilege[4]—which "protects both the confidential giving of professional advice by an attorney . . . as well as the giving of information to the lawyer to enable counsel to give sound and informed advice," *Metropolitan Life Ins. Co. v. Aetna Cas. & Surety Corp.*, 249 Conn. 36, 52 (1999)—the Connecticut Supreme Court has held that the "privilege implicitly is waived when the holder of the privilege has placed the privileged communications in issue." *Hutchinson v. Farm Family Cas. Ins. Co.*, 273 Conn. 33, 39 (2005) (describing "recogni[tion]" of *Metropolitan Life Ins. Co.*, 249 Conn. at 52–53) (emphasis added).[5] A litigant does not place her privileged communications "at issue" when she does "not rely[] on [them]." *Metropolitan Life Ins. Co.*,

---

[4] Although in Connecticut the psychologist-patient privilege is a creature of statute, *see* Conn. Gen. Stat. § 52-146c(b), while the attorney-client privilege is grounded in the common-law, *see Shew v. Freedom of Information Comm'n*, 245 Conn. 149, 157 (1998) (describing "the well established legal principles governing privileged communications between attorney and client" by reference to *Upjohn Co. v. United States*, 449 U.S. 383 (1981)); *Upjohn Co.*, 449 U.S. at 389 ("The attorney-client privilege is the oldest of the privileges for confidential communications known to the common law")), the rationales underpinning these privileges and the principles of implied waivers of the privileges are closely analogous, *see Jaffee v. Redmond*, 518 U.S. 1, 10 (1996) (analyzing scope of psychotherapist-patient privilege by analogy to attorney-client privilege and explaining that "[l]ike the spousal and attorney-client privileges, the psychotherapist-patient privilege is 'rooted in the imperative need for confidence and trust'" and "depends upon an atmosphere of confidence and trust in which the patient is willing to make a frank and complete disclosure of facts, emotions, memories, and fears"); *In re Sims*, 534 F.3d 117, 133–34 (2d Cir. 2008) ("agree[ing]" with case that addressed the "at-issue" implied waiver of a litigant's "psychotherapist-patient privilege" by "[a]nalogizing to other testimonial privileges, 'consistent with the Supreme Court's analogy in *Jaffee*'").

[5] The Connecticut Supreme Court has used the terms "in issue" and "at issue" interchangeably when discussing the implied-waiver-of-privilege doctrine in the analogous context of the attorney-client privilege. *Compare Hutchinson*, 273 Conn. at 39 ("in issue"), *with Metropolitan Life Ins. Co.*, 249 Conn. at 52 ("at issue"). Lower Connecticut courts have done similarly. *See, e.g.*, *Baranowski v. Safeco Ins. Co.*, No. cv030176458S, 2007 WL 2428960 (Conn. Super. Aug. 10, 2007); *Reardon v. Savill*, 25 Conn. L. Rptr. 605 (Conn. Super. 1999).

9

249 Conn. at 54–55. "Merely because the communications are relevant does not place them at issue," *id.*, and "[w]hen privileged communications are not at issue, the opposing party cannot destroy the . . . privilege by merely claiming a need for the documents," *id.* 56–57. Instead, "the 'at issue,' or implied waiver, exception is invoked only when the contents of the legal advice is integral to the outcome of the legal claims of the action," which "is the case when a party specifically pleads reliance on an attorney's advice as an element of a claim or defense . . ." and thus "has waived the right to confidentiality by placing the content of the attorney's advice directly at issue because the issue cannot be determined without an examination of that advice." *Id.* 52–53. Thus, only if she has placed it "at issue" by "specifically plead[ing] reliance on" it, *id.*, has a litigant has "introduce[d] [her] psychological condition as an element of [her] claim or defense," Conn. Gen. Stat. § 52-146c(c)(2).

It is clear that Mrs. Vecsey has not put her psychological condition at issue in this litigation. Safeco has asserted a variety of legal theories in support of its claim for declaration of non-coverage, but as a defendant Mrs. Vecsey has not asserted any claims or defenses for which her psychological condition is an element.

Even if Mrs. Vecsey's pleadings in the underlying tort action were relevant to disposition of Safeco's motion, Safeco fares no better. Safeco argues that Mrs. Vecsey "has put her mental state at issue" (Pl.'s Mot. at 5) in the Negligence Action because she alleges that she "suffered and continues to suffer from physical *and mental distress*" (Negligence Action Compl. at ¶ 9 (emphasis added)). But Mrs. Vecsey's allegation of "mental distress"—which is unaccompanied by any independent cause of action for mental distress, such as negligent or intentional infliction of emotional distress, or claim for a specific mental disorder or condition—is precisely the sort of "garden variety" claim that the Second Circuit

10

has held, in the closely analogous context of the psychotherapist-patient privilege under Federal Rule of Evidence 501, does not impliedly waive the privilege. *See In re Sims*, 534 F.2d 117, 141 (2d Cir. 2008) ("Finally, we reject respondents' contentions . . . that any claim of 'even . . . "garden variety"' injury waives the psychotherapist-patient privilege,' and that a plaintiff's mental health is placed in issue whenever the plaintiff's claim for 'unspecified damages' may 'include[] some sort of mental injury,'" because that argument has been "foreclosed" by *Jaffee v. Redmond*, 518 U.S. 1 (1996), and "would disregard the principle [articulated in *United States v. Salerno*, 505 U.S. 317, 323 (1992)] that '[p]arties . . . do not forfeit [a privilege] merely by taking a position that the evidence might contradict,'" and because if respondents' contentions were the rule "then in virtually every case a forfeiture might be found.") (citations to record omitted); *Jacobs v. Conn. Cmty. Technical Colls.*, No. 3:08cv868(CFD)(TPS), --- F.R.D. ----, 2009 WL 2046016, *3 (D. Conn. July 15, 2009) (explaining that "[i]n *Sims* the Second Circuit adopted the narrow view of waiver," under which "a plaintiff is not deemed to have waived the privilege by alleging only 'garden variety' emotional distress," where "'[g]arden variety claims refer to claims for compensation for nothing more than the distress that any healthy, well-adjusted person would likely feel as a result of being so victimized,'" as opposed to "claims for more 'severe' emotional distress, such as those involving a diagnos[i]s of a specific psychiatric disorder'") (quoting *E.E.O.C. v. Nichols Gas & Oil, Inc.*, 256 F.R.D. 114, 119–21 (W.D.N.Y. 2009) (quoting and discussing *In re Sims*, 534 F.3d at 129, 134, 141)); *see also id.* at *4 (holding that while a "plaintiff [who] has not [pleaded] a separate cause of action for emotional distress" would "not [have] waived the privilege because his complaint asserts no more than a garden variety claim for emotional distress," a plaintiff who relies on letters from two psychotherapists observing

11

specific mental distresses—including "a Major Depressive Disorder accompanied by symptoms of Anxiety"—of which "[a] primary source" was the employment discrimination at the core of his complaint, had put his mental state at issue and thus impliedly waived the privilege by "us[ing] the privileged information as a sword and then rely[ing] on the privilege itself as a shield.").

Because Mrs. Vecsey has not put her psychological condition "at issue" in either this declaratory-judgment action or in the underlying Negligence Action, she has not impliedly waived her psychologist-patient privilege under Conn. Gen. Stat. § 52-146c. These records being protected by the psychologist-patient privilege, Safeco's motion to compel is denied as to records of Mrs. Vecsey's treatment with Dr. Matefy.[6]

### 3. *Contractual Duty to Disclose*

Finally, Safeco argues that under the Homeowner's Policy "both Mr. and Mrs. Vecsey have a contractual duty to disclose the records related to th[e carrot] incident" because that Policy requires the "insured[s]" to "help [Safeco] . . . to secure and give evidence" regarding "an accident or occurrence" "at [Safeco's] request." (Homeowner's Policy, Ex. A to Pl.'s Reply Mem. Supp., at 17–18.) This argument fails for two independent reasons. First, it is not properly before the Court because Safeco failed to raise it in its memorandum in support of its motion to compel, *see* D. Conn. Local R. 7(d) ("Any reply brief . . . must be strictly confined to a discussion of matters raised by the responsive brief[.]"), and will be denied on

---

[6] Safeco's Motion to Compel is directed only at Mrs. Vecsey. Nonetheless, in a one-page submission to the Court Mr. Vecsey "adopts the objection . . . along with the legal arguments" advanced by Mrs. Vecsey. (Mr. Vecsey's Mem. Opp'n [Doc. # 25].) Mr. Vecsey has also filed a privilege log asserting his privilege not to disclose the treatment records of his therapy—also with Dr. Matefy—that is essentially identical to that filed by Mrs. Vecsey except for the dates of treatment. (Mr. Vecsey's Privilege Log [Doc. # 33].)

that basis. Second, Safeco has not brought its motion to compel against Mr. Vecsey, and Safeco's argument has no merit as to Mrs. Vecsey because the rule only applies where the insurer seeks information from an insured it will defend or indemnify and the interests of the insurer and insured are aligned against a third party—not, as here, where Mrs. Vecsey, who is an insured but not the person whose coverage is disputed by Safeco, has interests clearly adverse to the insurer. *See Carrier Corp. v. Home Insurance Co.*, No. 35 23 83, 1992 WL 139778, *8–*9 (Conn. Super. June 12, 1992) ("[T]he cooperation clause does not apply 'unless there is a defense being provided' by the insurer. . . . Absent indications to the contrary, where an insured is contractually required to assist its insurer in preparing a defense to claims brought *against the insured by third parties*, the insured cannot in good faith entertain a reasonable expectation that the facts underlying those claims will not be disclosed to its insurer once the claim for coverage is made. . . When the claim first arises, insurer and insured are not adverse, but are in privity and *share a common interest* in minimizing their exposure to legal and monetary liability and, until there is a declaration to the contrary, insurers continue to bear responsibility for settlement and litigation costs in the underlying action.") (second emphasis in original); *see also Arton v. Liberty Mutual Insurance Co.*, 163 Conn. 127, 132–35 (1972) (citations omitted, emphasis added) ("The purpose of the cooperation provision is 'to protect the interests of the insurer.' . . . This is particularly true where the insured is the only *nonadversary* source of information available to the insurer.").

II.     Mrs. Vecsey's Motion to Compel [Doc. # 26]

Mrs. Vecsey moves to compel Dr. C. E. Bain (Safeco's expert witness), and his employer, Biodynamic Research Corporation ("BRC") to produce documents pursuant to

13

subpoenas served on each of them. Such documents relate to the compensation Dr. Bain and BRC have received and expert witness reports they have prepared, which Mrs. Vecsey seeks in order to impeach Dr. Bain's expert testimony by arguing that he is biased because he depends financially on serving as an expert witness for the insurance industry generally, and for Safeco specifically. Dr. Bain and BRC, through counsel for Safeco, have objected to the following three of Mrs. Vecsey's requests:

1. Financial information disclosing income from expert testimony, consulting, etc. for the past 5 years including tax returns with all schedules, w-2 forms, 1099 forms, K-1 forms for Mr. Bain and Biodynamic Research Corporation.

2. Reports prepared related to eye injuries or periorbital injuries.

3. Deposition or trial transcripts concerning eye injuries or periorbital injuries.

(Ex. A to Mrs. Vecsey's Motion to Compel [Doc. # 26]; Opp'n Mrs. Vecsey's Mot. Compel [Doc. # 29].) In opposition to Mrs. Vecsey's motion to compel, "in the spirit of cooperation and in an effort to provide plaintiff's counsel with information directed at the issues seemingly pursued," BRC and Dr. Bain proffered of an affidavit of BRC's Custodian of Records, Charles E. Merrill, containing estimates of the proportion of revenues obtained by BRC from "forensic consulting services" and the proportion of such services paid by "insurance companies, their policyholders, manufacturers[,] and/or their counsel." (Merrill Aff., Ex. A to Opp'n Mrs. Vecsey's Mot. Compel, at ¶¶ 11–12.) Mr. Merrill avers:

> [I]t is estimated that greater than 95% of BRC's revenues are derived from forensic consulting services and less than 5% of BRC's revenues are derived from externally funded research and other sources. It is important to note that BRC also conducts internally funded research (e.g., BRC's low-velocity

14

> crash test series, the results of which have been published in peer-reviewed publications and cited internationally).
>
> It is further estimated that greater than 90% of BRC's forensic consulting service revenues on litigated matters are derived from payments from defendants (i.e., insurance companies, their policyholders, manufacturers) and/or their counsel. It is estimated that less than 10% of BRC's forensic consulting services revenues only litigated matters for 1990–2001 derived from payments from plaintiffs and/or their counsel.

(*Id.* (paragraph break omitted).)

At a telephonic conference on June 29, 2009 counsel for Mrs. Vecsey stated that he would be satisfied by additional information regarding the proportional sources of BRC's and Dr. Bain's revenue, of the sort provided by Mr. Merrill. The parties also agreed to confer to limit the scope of Mrs. Vecsey's requests for Dr. Bain's reports and testimony transcripts. Thereafter, Mrs. Vecsey represented that she "is willing to limit [Requests Nos. 2 & 3] to blunt force trauma to the eye causing periorbital injuries, including but not limited to, orbital floor fractures caused by a baseball, beercan or fist." (Mrs. Vecsey's Reply Brief [Doc. # 35] at 2.) The Court, having considered the parties' positions, and in light of the colloquy on the record on June 29, 2009, grants in part and denies in part Mrs. Vecsey's Motion to Compel as follows:

1. Given the agreement reached on June 29, 2009 between Mrs. Vecsey and Dr. Bain/BRC that Request No. 1 seeks information clearly relevant to the action—that is, Dr. Bain's credibility as an expert witness—Dr. Bain shall produce an affidavit providing the following information covering the period July 1, 2005 to the present: (a) the percentage of

15

his annual income derived from his employment at BRC; (b) the dollar-figure, or percentage of his total billings, that are for expert testimony or forensic consulting services related to actual or anticipated litigation; (c) the dollar-figure, or percentage of his total billings, that were billed to insurance companies, their policyholders, manufacturers, and/or their counsel; (d) the dollar-figure, or percentage of his total billings, that were billed to Safeco or any Safeco subsidiary; and (e) the dollar-figure, or percentage of his total billings, that were billed for litigation-related expert testimony or forensic consulting services to persons or entities with interests adverse to insurance companies, their policyholders, and/or manufacturers. A principal for BRC shall produce an affidavit providing the same information as to BRC.

2.  On June 29, 2009 Mrs. Vecsey and counsel for Dr. Bain and BRC agreed that Dr. Bain and BRC would produce the transcripts of deposition or trial testimony where they are in possession of such transcripts and reports, and would produce a list of case-identifying docket numbers for all cases in which Dr. Bain has provided expert witness deposition and/or trial testimony. The Court held that the reports written by and relied on by Dr. Bain are relevant, but that reports written by or relied on by BRC employees other than Dr. Bain are not relevant, unless consulted or relied on by Dr. Bain in formulating his opinion in this case. Moreover, Mrs. Vecsey's proposed limitation on the scope of the subject matter of reports, depositions, and trial transcripts is reasonable, and the Court construes such requests as limited to reports, depositions, and trial transcripts relating to "blunt force trauma to the eye causing periorbital injuries, including but not limited to orbital floor

fractures caused by a baseball, beercan or fist." Thus, as to matters relating to "blunt force trauma to the eye causing periorbital injuries, including but not limited to orbital floor fractures caused by a baseball, beercan or fist," Dr. Bain and/or a principal of BRC shall produce: (a) an affidavit listing the docket number of every case in which Dr. Bain has provided expert witness deposition and/or trial testimony; (b) all reports Dr. Bain has written since July 1, 2005; (c) every report—whether or not authored by Dr. Bain—on which Dr. Bain has relied in formulating his opinion in this case; and (d) all transcripts of deposition and/or trial testimony Dr. Bain has given that are in Dr. Bain's and/or BRC's possession.

III.   Conclusion

For the foregoing reasons, and as set forth above, Safeco's Motion for Reconsideration [Doc. # 44] is GRANTED, and Safeco's Motion to Compel [Doc. # 20] and Mrs. Vecsey's Motion to Compel [Doc. # 26] are each GRANTED IN PART AND DENIED IN PART.

IT IS SO ORDERED.

/s/
Janet Bond Arterton, U.S.D.J.

Dated at New Haven, Connecticut this 3d day of September, 2009.

17